CASE 56—INDICTMENT—JUNE 3, 1882.

## Williams v. The Commonwealth.

APPEAL FROM FAYETTE CIRCUIT COURT.

1. The law makes no distinction between a general and a particular exception, either being sufficient to authorize this court to examine an alleged error based upon an exception, as taken in this case.

2. It was the duty of the court to instruct the jury that, if they believed the appellant to be guilty, but entertained a reasonable doubt as to the degree of his offense, they should convict him of the lower degree.

PORTER & WALLACE FOR APPELLANT.

1. It was the duty of the court to have instructed the jury in express terms that, if they had a reasonable doubt that appellant was guilty, he was entitled to an acquittal. And further, if they had a reasonable doubt as to the degree of his offense, they must find him guilty of the lower degree. (Sec. 23, Crim. Code; Mickey v. Commonwealth, 9 Bush, 597.)

Williams v. The Commonwealth.

2. It was the duty of the court to instruct as to the whole law of the case.   (79 Ky. Rep., 177.)

3. The instruction on pages 44-'5 of the record is error.

4. Appellant had the right to take exception to the instructions in his own way, and was not bound to indicate to the court his particular objection to this or that instruction.

P. W. HARDIN, ATTORNEY GENERAL, FOR APPELLEE.

1. It is manifest that appellant did not want the fair trial in the circuit court he now insists upon, or he would have stated his objections to the instructions. He is a party to the so-called errors by his silence when he should have spoken.

2. The instructions, as a whole, completely and fairly state the law. (Mickey v. Commonwealth, 597.)

JUDGE HARGIS DELIVERED THE OPINION OF THE COURT.

The appellant Williams, a common laborer, twenty-three years old, unmarried, free from the excessive use of ardent spirits, and generally peaceable, having been indicted, tried in the Fayette circuit court, whither the venue had been changed from Woodford county, where the act was done, and convicted of the offense of murder, and sentenced to the penitentiary for life, prosecutes this appeal.

The evidence tends to prove that Williams was paying his addresses to a white servant girl living at the time in the family of Frank Pierce, and that the latter made to her disparaging remarks of Williams, to whom she communicated them.

Shortly afterwards, and late in the evening, having armed himself, he went to Pierce's house, called him out to the gate, accused him of talking about him, and when Pierce denied having done so, denounced him as a liar.

Pierce left the gate, expressing a desire to avoid any quarrel, and while walking back to the door of his dwelling Williams said, "You are a d—d liar," and perhaps reiterated his denunciation in profane language.

Pierce whirled, returned to the gate, and struck over or pushed it open, and struck at Williams with his fist, but it is not clear whether he hit him or not. Williams left the gate, appearing to retreat, and Pierce followed him some twenty yards in a stooping posture, as if to catch him or pick up a rock, when Williams turned upon him, and in quick succession fired three shots, one of which struck Pierce in the rear, and caused his death a few hours afterwards.

When the evidence was through, the court, of its own motion, handed prepared instructions to the attorneys for the appellant, one of whom said he would reserve an exception to all the instructions, and the court asked him to indicate what part of the instructions he objected to, and the grounds of the objection, which he refused to do, and it is maintained by the Attorney General that this refusal destroys the validity of the exception.

Such a rule would operate very harshly in cases where the attorney for the accused might not be able to point out the illegal instruction, and such cases as supposed have and will continue to occur, hence the law makes no distinction between a general and particular exception, as either is sufficient to authorize this court to examine an alleged error based on an exception taken as in this case.

There is, however, but one tenable objection to any of the instructions given by the court, the main error consisting in a failure to give an instruction as to the doubt about the degrees of the offense which might exist in the minds of the jury. The criticism of the form of the instructions is wholly unfounded. The court instructed the jury, among other things, that "there are two classes of cases in which a killing not done in self-defense may be voluntary man-

slaughter;" and defined the first class to be "where, without malice, one person, under the influence of a sudden burst of anger, caused by *great* provocation, intentionally kills another," and then instructed the jury, in explanation of legal provocation, in this language:

"The provocation requisite to constitute voluntary manslaughter of the first class above referred to must consist of a blow or assault of some degree of violence; words will not suffice, nor will a *trifling* assault or blow. The blow or assault must be of a nature calculated to create sudden anger or exasperation."

The words which we have italicized, and the last clause of this instruction, when considered together, render it erroneous.

The jury were, in effect, told that the force alone of the blow or assault must be such as to produce sudden passion.

While we agree that a blow or assault, unaccompanied by any circumstance of indignity or aggravation, being of a trifling nature or slight degree not in itself calculated to produce sudden passion, would not constitute legal provocation, yet we are of opinion that it is not always necessary that the blow or assault should be of such a degree of force, regardless of the attending circumstances, as would probably cause sudden passion.

It is often the case that, although the blow or assault be trifling, the flash of the eye, the scorn of the lip, or the imperious manner and the occasion, associated with previous insult or quarrel, exasperate and arouse the passions more deeply and justly than a violent blow.

Hence, it is not the degree alone of the force with which a blow may be struck or an assault inflicted that constitutes legal provocation, but it consists in an assault or battery of

some degree which, under the attending circumstances, or by reason of its force, is calculated to create, and does create, sudden heat and passion.

As it was the duty of the court to state the law fully and correctly to the jury in the instructions, it was error, therefore, not to instruct them that, if they should believe the appellant guilty, but entertained a reasonable doubt of the degree of his offense, they should convict him of the lower degree.

This is substantially the language of section 239 of the Criminal Code, and the failure to so instruct the jury affected seriously his substantial rights.

It is true that the jury must believe beyond a reasonable doubt that the accused is guilty before they can convict at all, but it might be that while they had no doubt of his guilt, they entertained a reasonable doubt of the degree of that guilt, and the policy of this humane provision of the law cannot be questioned, nor can it be rendered nugatory by a failure to execute it.

Whenever there is evidence introduced which might be calculated to raise a reasonable doubt of the degree of the guilt of the accused, the jury should be instructed in pursuance of the provision of the Code quoted.

In the case of Mickey v. Commonwealth, 9th Bush, this court held, while it was not a reversible error in that case, that the jury should not be confined to a reasonable doubt growing out of the evidence, therefore the instruction limiting the jury to a reasonable doubt arising *upon* the evidence was in conflict with authority, but we would not have reversed this case for that error alone.

Reasonable doubt must arise either from the absence or insufficiency of the evidence. It may be insufficient because

not believed, or not enough to establish the fact; but whatever may be the source of the doubt, whether from any or all of these causes, the accused is entitled to the benefit of it, as the guilt must be affirmatively proven.   As was said in the last mentioned case, "the better practice is to follow as nearly as practicable the language of the Criminal Code" relative to reasonable doubt; for those words, it seems to us, define the idea conveyed by them about as well as any explanation or extension of them in any other words.   .

Wherefore, the judgment is reversed, and cause remanded, with directions to grant appellant a new trial.